551 So.2d 855 (1989)
STATE of Louisiana, Plaintiff-Respondent,
v.
Roney Burton WOMACK, Defendant-Applicant, News-Star-World Publishing Corporation, Inc., Intervenor-Applicant.
Nos. 21592-KW, 21622-CW.
Court of Appeal of Louisiana, Second Circuit.
November 9, 1989.
Writ Denied November 20, 1989.
*856 James Michael Small, Alexandria, Celia R. Cangelosi, Baton Rouge, for defendant-applicant, Roney Burton Womack.
Hudson, Potts & Bernstein by William T. McNew, Monroe, for intervenor-applicant, News-Star-World Pub.
James Allan Norris, Jr., Monroe, for plaintiff-respondent.
Before HALL, MARVIN and LINDSAY, JJ.
MARVIN, Judge.
The above applications for exercise of our supervisory jurisdiction arise out of pre-trial rulings by the trial court in a second-degree murder charge pending against Womack, the applicant under our KW docket number 21,591. The rulings complained of affect closure of the courtroom to the public, which, on the one hand, Womack seeks on constitutional fair-trial principles.
On the other hand, the newspaper applicant under our CW docket number 21,622 resists any closure on opposing constitutional principles that effectively guarantee the right of access to judicial proceedings to the public. See and compare Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Press Enterprise Co. v. Superior Court of California, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); State v. Eaton, 483 So.2d 651 (La.App. 2d Cir.1986); and State v. Fletcher, 537 So.2d 805 (La.App. *857 2d Cir.1989). The State has not responded for or against either application.
Having consolidated the two applications to consider each complaint in the light of the other and to avoid repetitious opinion, we grant the application of the newspaper and reverse the trial court with a peremptory order and we deny the application of Womack.

PROCEDURAL POSTURE
After being arrested and charged in December 1988 with a 2d degree murder which occurred about two months before, Womack periodically filed several pre-trial motions, the rulings on most of which he does not here complain. His motions to suppress, filed in February and in June 1989 were scheduled for hearing on September 11. On that date Womack formally moved for a closed hearing of his motion for closure of the hearing of his motions to suppress which he filed on that date. The newspaper reporter in the courtroom objected to any closure. The newspaper's attorney appeared about 30 minutes later and made a more formal objection after the closed hearing of Womack's motion for closure had been concluded.

WOMACK'S COMPLAINT
Womack complains that the hearing of his motions to suppressnow scheduled on November 20 to allow for this writ dispositionshould be closed because the disclosure at the hearing of the motions to suppress of the fact that his confession was made before a polygraph examiner will add undue prejudicial effect to his allegedly inadmissible confession and will unfavorably influence prospective jurors and deny his right to a fair trial.
A transcript of the preliminary hearing in open court on December 7, 1988, however, contains testimony by a deputy sheriff that Womack confessed at least twice to officers in the presence of a polygraph expert, the last of which was recorded and transcribed. The transcript of the closed hearing of Womack's motion for closure of the hearing on the motions to suppress refers to stipulations submitted to the trial court under seal. The stipulations included a "polygraph release" and a "packet of material relating to the polygraph interview."
Neither of the applications state that the polygraph expert administered a polygraph test to Womack during the second, or recorded, confession that apparently was made shortly after the first. Each application indicates the expert merely heard and witnessed Womack's recorded confession to the police.
Both applications contain the transcript of the closed hearing of Womack's motion for closure that was heard and denied by the trial court on September 11. This transcript shows the trial court correctly applied the law in denying closure of the hearing on the motions to suppress. See cases cited supra. See also authorities discussed and cited in State v. Fletcher, supra. Neither applicant contests here the trial court's factual conclusions.
To successfully effect closure of a pre-trial hearing in a criminal proceeding and overcome the 1st Amendment right-of-access of the public, a defendant must show there is a substantial probability that
his right to a fair trial will be prejudiced by conducting the hearing publicly;
alternatives to closure cannot adequately protect his right to a fair trial; and
closure will afford effective protection against the perceived danger. See Press Enterprise Co. v. Superior Court of California, supra. In Eaton, supra, decided before Press Enterprise Co., we used the test of "reasonable likelihood."
Womack overlooks the fact that at the preliminary hearing held on December 7, 1988, in open court on his motion, it was clearly revealed by a deputy sheriff that a named "polygraph expert" was present when he confessed.
Q. There were two oral confessions, one of which was recorded?
A. Yes, sir ...
Q. Who was present ...?
A. Deputy Skipper Riley and A.M. "Gus" Aberhart.... Mr. Aberhart's *858 a polygraph expert ... He was there to "run" [a polygraph test on] several people involved in the case who we had not been able to really "alibi" out of the case.
The transcript of the recorded confession which Womack seeks to suppress reveals less about the presence of the polygraph expert at the confessions than was revealed in open court at the preliminary hearing in December 1988 (partially quoted above) and in the bond hearing in February 1989.
We cannot agree with Womack's argument that the fact that "there has been no publicity regarding the presence of a polygraph examiner during the confession," will only further prejudice him when this fact is revealed. We consider that Womack's "fact" means only that the news media simply have not publicized what was revealed in open court in December 1988. We shall not speculate why the newspaper has not publicized the presence of the polygraph examiner at Womack's confessions.
The 1988 murder and charge against Womack and pretrial rulings in 1989 have generated what the trial court called "extensive media build-up." Womack concedes that his confession has "already been reported to some degree ..."
On the showing made, we conclude that the hearing of the motions to suppress will disclose nothing other than what is already a part of the public record of the case. The transcripts that accompany Womack's application leads us to conclude that the trial court did not err in denying Womack's motion for closure of the hearing on his motions to suppress.
Womack has not shown there is a substantial probability (Press Enterprise Co., supra) or a reasonable likelihood (Eaton, supra) that a public hearing of his motions to suppress will prejudice his right to a fair trial. Publicity is not synonymous with prejudice. Eaton, supra.
We deny Womack's application, his request for a stay, and his motion to seal his application to this court. The recorded confession (here appended to Womack's application) only adds to the details that were earlier testified to in hearings held in open court. In our discussion of the newspaper's complaint we shall consider the trial court's "sealing" of the transcript of Womack's recorded confession and of other items referred to in the stipulations made by Womack and the State in the closed hearing.

NEWSPAPER'S COMPLAINT
The essence of the complaint by the newspaper is that the trial court should not have closed the hearing on Womack's motion for closure on September 11 without affording a reasonable notice to the public to be heard in opposition to the closing and that, in any event, a stricter burden should have been imposed on Womack to show more than the conclusion that "sensitive information" will be disclosed to support his motion for closure. The newspaper further complains that stipulations made at the closed hearing and other documents, some of which were already "public," should not have been ordered "sealed" by the trial court.
We again recognize that the 1st Amendment right of access to pre-trial criminal proceedings is a right which may be qualified where circumstances warrant, but even then the public must be given an opportunity to be heard before closure is ordered. State v. Fletcher, supra, at p. 807; State v. Eaton, supra.
Due process requires that some reasonable notice of a hearing affecting the closure of pre-trial criminal proceedings and an opportunity to oppose closure must be given to the public before closure may be ordered. Globe Newspaper Co. v. Superior Court, supra; Gannett Co. v. DePasquale, 443 U.S. 368, 466, 99 S.Ct. 2898, 2939, 61 L.Ed.2d 608 (1979); State v. Eaton, supra; State v. Fletcher, supra. Merely because the closed hearing has been completed does not make the issue moot. Press Enterprise Co., supra.
Some cases have required docketing of such motions sufficiently in advance of their hearing. U.S. v. Criden, 675 F.2d 550 (3d Cir.1982); Application of the Herald *859 Company, 734 F.2d 93 (2nd Cir.1984). The newspaper suggests that we should require as much of the trial courts.
In closure cases a trial court is required to balance the two principles (fair trial v. public access) on a case to case basis and to analyze and find facts. Some reasonable, due-process, notice to the public of hearing of the motion for closure is also required. See Globe Newspaper Co. v. Superior Court, supra.
We recognize the variety in demography, in trial court rules, and in caseload of the 20 parishes in this circuit. In our adversary system each trial court has the inherent power to control its proceedings and to require that litigants and officers of the court comply with its rules and orders. We shall not, as the newspaper suggests, "adopt procedural requirements which must be met before closure may occur." The case law herein generally sets forth what is required.
We do suggest, however, in the interest of judicial efficiency, that each trial court adopt, as soon as possible, a policy peculiar to its individual circumstances which will comply with the law and effectively require, whenever closure of a pre-trial criminal proceeding is sought, that the grounds for the motion shall be set forth in writing and that sufficient reasonable and timely notice shall be given to the public of the time and date of the hearing of the motion for closure so as to allow any member of the public, including the press, reasonable opportunity to formally oppose the motion for closure.
We leave to the wisdom and experience of each trial court the details of what notice shall be required and how notice shall be given.

THE SEALING OF THE RECORD AT THE CLOSED HEARING
The trial court ruled that the September 11 closure hearing would be "closed" to allow Womack and the State to stipulate to evidentiary matters deemed necessary for the record of the hearing of the motion for closure. The transcript of the closed hearing appended to the newspaper's application appears to bear the original certification by the "official court reporter" of the trial court and may have been obtained as a public record. If so, the issue of that transcript being "sealed" by the trial court is rendered moot. If not, it is rendered moot by its filing here as a public record.
The trial court explained to the newspaper reporter that "we are not closing the suppression hearing itself. I am ordering the courtroom closed for the purpose of introduction ... of stipulations ... to be preserved for the ... Court of Appeal ... review of my ruling denying [closure of] the motion to suppress hearing [which] will be rescheduled later today ... for a hearing in the near future."
The stipulations thereafter essentially recited some of the procedural events about the case, the bond, the confessions, the publicity, and the documentary exhibits which had been furnished to Womack by the State. These exhibits were identified as
1. Rights waiver of November 2, 1988;
2. Consent to search of same date;
3. Rights waiver of December 1, 1988;
4. Rights waiver of same date;
5. Rights waiver of December 2, 1988;
6. Polygraph release;
7. Packet of material relating to polygraph interview.
The trial court ordered "those offerings be sealed ... along with the transcript of this hearing." Womack's counsel resumed the stipulation:
8. Although a copy is already in the record, I mark ... a copy of the transcript of defendant's recorded confession
Womack's counsel continued: "All of this is to be sealed, assuming that the Judge orders that.... as my next offering, I ... offer a transcript of the hearing [of the]... preliminary examination ... that has been transcribed ..." Our emphasis. The court thereafter and perhaps through oversight made no ruling relative to the sealing of the recorded confession and gave counsel the opportunity to orally argue. Womack *860 did not request that the court seal the transcripts of the preliminary examination and the bond reduction hearings which he placed in this record at the closed hearing. After hearing arguments the court "opened" the courtroom to the public before announcing its formal ruling, which we attach hereto as an unpublished appendix.
We have suggested that where closure is proper, "the court should take whatever steps are necessary to prevent the release of ... evidence which forms the basis of the motion for a closed hearing." Eaton, supra. In this instance the brief closure was understandably allowed by the trial court on Womack's request to make a record for our consideration of his writ application. Even for that purpose, however, and before the closure is allowed, some reasonable notice and the opportunity for the public to be heard must still be afforded under the law we have previously discussed. See Fletcher, supra.

DECREE
We must find that the trial court should not have allowed even the limited closure and "sealing" of the exhibits introduced without the required notice and opportunity afforded to the public. Inasmuch as the hearing on the Motions to Suppress will not be closed, we therefore grant the application of the Newspaper to reverse the trial court's ruling and peremptorily order the trial court clerk to file the record of the closed hearing as a public record. Eaton, supra.
The trial court's denial of closure of the scheduled hearing on Womack's Motions to Suppress was not error. Further review is not warranted and Womack's application and his motions to this court are denied.
Remanded.