787 So.2d 1020 (2001)
STATE of Louisiana
v.
George LEE, III.
No. 2000-K-2516.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 2001.
*1023 William F. Wessel, Wessel & Associates, New Orleans, Counsel for Relators, Lionel *1024 Burns and Harry F. Connick, District Attorney.
Robert Jenkins, New Orleans, Counsel for Defendant/Respondent, George Lee.
Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER and Judge DENNIS R. BAGNERIS, SR.
WALTZER, J.
We are called upon to decide whether relator Lionel Burns, Assistant District Attorney, Parish of Orleans, is in contempt of court for the prosecutorial misconduct of tampering or planting napkins in the pants of defendant, George Lee, a former New Orleans police officer, and for failing to timely notify defense counsel of the existence of the newly discovered evidence.

STATEMENT OF THE CASE
We adopt the procedural history of this matter, as set forth in this Court's opinion in State v. Lee, 2000-2429 (La.App. 4 Cir. 1/4/01, 778 So.2d 656).
On November 19, 1999, in case # 410-779, George Lee, III, ("the defendant") was charged by indictment with two counts of sexual battery, two counts of extortion, and three counts of second degree kidnapping, charges to which he subsequently pleaded not guilty. Some counts were severed, and he was tried on January 20, 2000. The jury found him not guilty of one count of extortion and could not agree on a verdict as to one count of sexual battery and two counts of kidnapping. Trial was reset, and on February 24, 2000, the State nolle prosequied this case.
On that same date, in case # 412-994, the State reinstituted the remaining charges and added more, charging the defendant with six counts of forcible rape and four counts of second degree kidnapping. The defendant again pled not guilty to all charges. On March 30, 2000, the court severed some of the counts, and the State noted its intent to seek writs. This Court granted writs and ordered that the counts be tried together due to the similarities of the incidents. State v. Lee, XXXX-XXXX, unpub. (La.App. 4 Cir. 3/31/00). The Supreme Court denied writs. State v. Lee, XXXX-XXXX (La.4/3/00), 759 So.2d 78.
On April 3, 2000, at the beginning of trial, the defense again moved to sever some of the counts, and the court denied the motion. The defense sought writs, and this Court denied the application. State v. Lee, XXXX-XXXX, unpub. (La.App. 4 Cir. 4/3/00). On April 5, 2000 the trial court declared a mistrial, finding the State had concealed Brady material. The court ordered the State to produce its entire file for the defense. The State noted its intent and sought writs in this Court. This Court granted writs, vacated the trial court's order; and ordered the State to review its file and produce any evidence which bears on the credibility of its witnesses. This Court also ordered the State to provide the defense with a list of any statements in its possession, including the name of the person who gave the statement and the date the statement was made. This Court further stated: "Upon request by the State, motion of the defense or upon its own initiative, the trial court may review any evidence in camera to determine whether the defense is entitled to it." State v. Lee, XXXX-XXXX, p. 7 (La. App. 4 Cir. 5/8/00), 767 So.2d 97. The defendant sought writs in the Supreme Court but then moved to dismiss the application; that motion was granted on June 21, 2000.
On May 19, 2000, the State nolle prosequied the charges in case # 412-994; they reinstituted the charges and added *1025 additional counts in new case # 414-519, the present case, wherein the defendant is charged with seven counts of forcible rape and five counts of second degree kidnapping. Again, the defendant pled not guilty to all counts. Pursuant to this Court's ruling in 2000-K-0831, the State produced the list of all statements in its possession. Trial was set for June 13, 2000. According to the State in a prior application, on May 30, 2000, it turned over the tapes of these statements to the court for an in camera inspection for any Brady material. The court then turned the tapes over to the defense. The State learned of the trial court's action on June 12, 2000, the day before trial. The State noted its objection to the court's action. The court granted the defense a continuance of the trial to August 21, 2000. On June 13, 2000, the parties again met in court, and at that time the court learned that the State was again in possession of the taped statements. The court ordered the State to give the tapes back to the defendant, admitting that it did not review the tapes before handing them over to the defense because it would have taken too much time to do so. The State objected and noted its intent to seek writs. The State sought relief from the trial court's ruling. The trial court stayed its order and reset the trial to September 15, 2000. On August 29, 2000, this Court granted the writ, noted that the trial court had disregarded this Court's disposition in writ 2000-K-0831, and again ordered the trial court to conduct an in camera inspection of the tapes before ordering that only the tapes containing exculpatory material should be turned over to the defense. State v. Lee, XXXX-XXXX, unpub. (La.App. 4 Cir. 8/29/00).
Trial was reset to October 17, 2000, and continued to October 18, 2000, when it began. Trial continued on October 19, 2000 and October 20, 2000. On October 20, 2000, defense counsel filed a motion for contempt for prosecutorial misconduct on the part of the prosecutor, Assistant District Attorney Lionel Burns ("Mr. Burns" or "Lionel Burns"). The defendant filed a motion to suppress evidence, motion for a mistrial, and motion for contempt as to Lionel Burns, the prosecutor. On October 23-25, 2000 the hearing on the motions was held.
On October 25, 2000, the trial court ordered the jurors into the courtroom and declared a mistrial and released the jurors. The court did not allow the State to call two more witnesses on the defense motion. The State proffered the testimony of the two witnesses who would have testified. The trial court dismissed the defense motion for contempt because defense counsel had no grounds to move for contempt; however, the court on its own motion found the prosecutor, Lionel Burns, in constructive contempt. Alternatively, the trial court found prosecutorial misconduct. The trial court sentenced the prosecutor to six months in Orleans Parish Prison. The trial court granted the motion to suppress and the motion for a mistrial. The court declared that the motion concerning discovery rule violations was moot. The State noticed its intent to file for writs as to the constructive contempt and the decision to grant the motion to suppress and orally requested a stay order, which was denied. The trial was reset to January 9, 2001.
On October 25, 2000, the State filed an emergency writ in this Court relating to the issue of contempt. This Court granted a stay order, ordered the prosecutor released from jail, ordered the State to supplement the writ application, and ordered the defense to file a response. *1026 On October 31, 2000, this Court granted the State's emergency writ relating to the prosecutor's contempt and vacated the contempt order because the mandatory procedure set out in La. C.Cr.P. art. 24 had not been followed. This Court remanded the matter for proceedings consistent with the writ disposition. State v. Lee, 2000-2357, unpub. (La.App. 4 Cir. 10/31/00).
Id. at pp. 1-4 (footnotes omitted).
Subsequently, the trial court held a hearing on 17 November 2000. The court denied Mr. Burns' motion to recuse, and found Lionel Burns in constructive contempt of court, specifically for tampering with evidence by planting napkins in Mr. Lee's trousers. The court excluded the napkins from trial and sentenced Mr. Burns to six months in Orleans Parish Prison. Mr. Burns is currently before this Court in a writ application filed 17 November 2000, seeking relief from the trial court's judgment.
On 17 November 2000, this Court granted a stay, ordered that Lionel Burns be released from jail without bond, ordered the trial court to provide a minute entry and a transcript of the contempt hearing by 27 November 2000 at noon, ordered the respondent to file a response by 27 November 2000 at noon, and invited the court to file another per curiam. On 21 November 2000, the State filed a supplemental writ in which it sought to set aside the "Pre-Trial Trial, Post Trial Publicity Order." On 22 November 2000, the trial court provided this Court with a per curiam relating to the publicity order. On 27 November 2000, counsel for the defendant, Robert Jenkins, filed a response.
On 17 November 2000, the State filed another emergency writ relating to the denial of its motion to recuse. This Court denied the writ that same day. State v. Lee, 2000-2510 unpub. (La.App. 4 Cir. 11/17/00). The State also filed an application seeking review of the trial court's 25 October 2000 decision to exclude the napkins from being used at the January 2001 trial. This Court denied the writ in State v. Lee, 2000-2429 (La.App. 4 Cir. 1/4/01, 778 So.2d 656).
On 28 November 2000, the trial court provided this Court with a copy of its decision finding Mr. Burns in constructive contempt, including his findings of fact and conclusion. The court also attached excerpts from the 19 October 2000 transcript, the defense motion for bill of particulars and discovery and inspection, and the 17 November 2000 minute entry as exhibits.
On 30 November 2000, Mr. Burns filed a motion to file an exhibit, in which he sought to file a letter dated 27 November 2000 from Ike Spears requesting that William Wessel, Mr. Burn's counsel, appear on his radio show. On 30 November 2000, the State filed a copy of the 17 November 2000 transcript. On 30 November 2000, this Court issued an order authorizing Lionel Burns to file a brief within ten days of the filing of the transcript. On 11 December 2000, Mr. Burns filed a brief.
At the 17 November 2000 constructive contempt of court hearing, Dwight Doskey appeared as counsel to question Mr. Jenkins, Lee's defense counsel, if necessary. Mr. Wessel, who was representing Lionel Burns, contested Mr. Jenkins' standing and his ability to call witnesses after the trial court had dismissed Mr. Jenkins' motion for contempt. Mr. Wessel also objected to Mr. Doskey's standing and the court's decision to let him ask questions. After police witnesses, a technician of the evidence and property division, and personnel of the district attorney's office had testified, Mr. Doskey attempted to call Mr. Jenkins to the stand, but Mr. Wessel objected unless Mr. Jenkins was the trial *1027 court's witness. The trial court agreed. Mr. Wessel's subsequent motion to dismiss the charges against Mr. Burns was denied.
The trial court announced the imposition of a publicity gag order and that any violation would result in contempt of court and sanctions and he found Mr. Burns guilty of constructive contempt.

ASSIGNMENT OF ERRORS:
In his writ application, Lionel Burns assigns as trial court error: 1) appointing Dwight Doskey (OIDP) to "prosecute" the contempt case against him; 2) finding that there was proof beyond a reasonable doubt that he committed constructive contempt of the court; and 3) imposing an excessive sentence of six months. In his supplemental brief, Mr. Burns assigns as errors: 1) the trial court erred by denying the motion to recuse without, at the least, referring the motion to recuse to be heard by another section of court; 2) the trial court did not provide sufficient notice by means of the factual allegations upon which the charge of constructive contempt was based; 3) the trial court erred by permitting counsel for Robert Jenkins, Dwight Doskey, to prosecute the case of constructive contempt; 4) there was insufficient evidence to convict Mr. Burns of constructive contempt; and 5) the publicity order was an erroneous and invalid regulation of pre-trial and post-trial proceedings in violation of U.S. Const. Amend. I, Bill of Rights, and La. Const. Art. I, § 7.

Recusal
Mr. Burns concedes that the issue of the recusal was before this Court in emergency writ, 2000-K-2510, and this Court denied the writ. He argues that he is entitled to have this Court revisit the issue, in light of the jurisprudence and "the overall import and intent of the articles of the code on recusation, not to mention the requirements of Due Process and the interest of the courts in avoiding the appearance of bias." We find that the issue has been adequately addressed and decided by this Court.
There is no merit to this assignment of error.

Insufficient Notice
Mr. Burns quotes from this Court's writ grant in 2000-K-2357, stating that Mr. Burns had not been served with "a written motion for contempt setting forth the facts upon which the alleged contempt was based." He argues that the subsequent motion for contempt did not comply with this Court's mandate.
The motion for contempt dated 2 November 2000 provided:
Pursuant to Louisiana Code of Criminal Procedure Articles 24(A)(B), Lionel Burns is notified and ordered to appear in Section "K" on November 13, 2000 at 9:00 A.M, (sic) to answer alleged constructive contempt of court violations, specifically Louisiana Code of Criminal Procedure 23(1); prosecution misconduct specifically tampering with and/or planting evidence, and discovery rules violations pursuant to Louisiana Code of Criminal Procedure Article 729.5.
La.C.Cr.P. art. 20 defines contempt of court as "an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." Contempt may be direct or constructive. La.C.Cr.P. art. 20. La.C.Cr.P. art. 23 provides in pertinent part:
A constructive contempt of court is any contempt other than a direct one.
A constructive contempt includes, but is not limited to any of the following acts:
(1) Willful neglect or violation of duty by a clerk, sheriff, or other person elected, *1028 appointed, or employed to assist the court in the administration of justice
La.C.Cr.P. art. 24 provides, in pertinent part:
A. When a person is charged with committing a constructive contempt, he shall be tried by the judge on a rule to show cause alleging the facts constituting the contempt. The rule may be issued by the court on its own motion or on motion of the district attorney.
B. A certified copy of the motion and of the rule shall be served on the person charged in the manner of a subpoena not less than forty-eight hours prior to the time assigned for trial of the rule.
Direct contempt is committed in the presence of the Court, and constructive contempt is committed outside of the presence of the Court. State v. Rodrigues, 219 La. 217, 224, 52 So.2d 756, 758 (1951); State v. Jones, 97-2684 (La.App. 4 Cir. 12/1/97), 703 So.2d 216, 218. The person charged with constructive contempt should be "tried on a rule to show cause that expressly alleges the facts constituting the contempt." In re Merritt, 391 So.2d 440, 444 (La.1980).[1]
Mr. Burns challenges the motion filed against him on multiple grounds. He argues that the motion did not contain factual allegations; rather it was conclusory; it did not include any date or description of the evidence, or delineate what evidence he allegedly tampered with or planted; it did not provide a description of the method or manner by which evidence was planted; it did not contain allegations of "willful neglect of a duty" or "willful disobedience of any lawful judgment, order, mandate, writ or process of court"; it was devoid of allegation of willfulness or any degree of intent necessary under La. C.Cr.P. art. 23; the allegations were vague, and he was not informed of the nature and cause of the accusation against him; and that the general phrase, "discovery rules violations," set forth no ascertainable standard by which he could have gauged his conduct and did not set forth any particular court order that was violated.
Although the motion for contempt does not provide a date, it clearly specifies that Mr. Burns was being accused of prosecutorial misconduct, specifically tampering with and/or planting evidence under La. C.Cr.P. art. 23(1) (violation of a duty by a person employed to assist the court in the administration of justice), along with discovery violations under La.C.Cr.P. art. 729.5 (under section B contempt of court for willful failure to comply with discovery articles). Technically, the motion for contempt did not set out the facts or the date of the improper conduct or the exact evidence allegedly planted; however, Mr. Burns certainly was put on notice as to the nature of the accusation against him and was able to defend against it.
Notice is defined as "information, an advise, or written warning, in more or less formal shape, intended to apprise a person of some proceeding in which his interests are involved, or informing him of some fact which it is his right to know and the duty of the notifying party to communicate". Black's Law Dictionary, (5th ed.1983). Notice is a requirement of procedural due process. Schexnider v. Blache, 504 So.2d 864, 865 (La.1987). Its purpose is to provide a party with a clear statement of charges in order to defend against them. See Goldberg v. Kelly, 397 *1029 U.S. 254, 267-68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). This notice must reasonably disclose "the nature of the charges" and "the substance of the relevant supporting evidence." Brock v. Roadway Express, Inc., 481 U.S. 252, 264-65, 107 S.Ct. 1740, 1749, 95 L.Ed.2d 239 (1987).
The uncontested evidence indicates that on the evening of 18 October 2000, following the first day of the third trial against Lee, three Assistant District Attorneys, Lionel Burns, Keva Landrum and Anthony Rovello, as well as a law clerk Zaren James, were organizing the evidence seized from Lee's home, when Burns allegedly discovered paper napkins in the pocket of Lee's uniform pants. The existence of these napkins, in Lee's possession, was a possible link to the charged sexual crimes, where the perpetrator used paper napkins to wipe himself. Thus, Assistant District Attorney Burns' alleged discovery of this evidence and his attempt to introduce the napkins, without notice to defense counsel, on re-direct examination of Sgt. Ray, are sufficient facts to notify Burns of the factual allegations, including the date and description of the nature and charges against him. Furthermore, Mr. Burns testified in detail at the first contempt of court hearing on 23 October 2000, regarding the identical issues in this appeal. Finally, Mr. Burns, as an experienced prosecutor participating in a high profile felony case, was aware of his discovery obligation to the defense, especially considering that previous trials resulted in a mistrial. Accordingly, we find that the complaint against Mr. Burns came as no surprise, and he was adequately informed of the charges against him.
This assignment of error is without merit.

Improper Delegation of Judicial Authority
Mr. Burns notes that the motion for contempt filed by Robert Jenkins, the defendant's counsel was dismissed by the trial court; however, he objected that Dwight Doskey, who was appearing in the event that Mr. Jenkins would be needed to testify as a witness, was allowed to question and cross-examine the witnesses. Although the trial court attempted to expand Mr. Doskey's role to counsel for the defendant, George Lee, Mr. Burns correctly states that Mr. Doskey repeatedly declared that he was representing only Mr. Jenkins. Mr. Burns argues that the trial court improperly allowed opposing counsel to prosecute the contempt charge brought by the court on its own motion.
In his response, George Lee counters that Mr. Doskey was asked to assume his role at the contempt hearing because he anticipated being called as a witness. Mr. Hans Sinha had represented the defendant at the October 19, 2000 hearing, where Mr. Jenkins had in fact testified.
Under the Rules of Professional Conduct of the Louisiana State Bar Association, Rule 3.7:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) The testimony relates to an uncontested issue;
(2) The testimony relates to the nature and value of legal services rendered in the case; or
(3) Disqualification of the lawyer would work substantial hardship on the client.
* * * *
(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a *1030 witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.
Part of the "general `advocate-witness' rule [is] that counsel should avoid appearing as both advocate and witness except under extraordinary circumstances." United States v. Hosford, 782 F.2d 936, 938 (11th Cir.1986), cert. denied, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). The commingling of the prosecutorial and adjudicative functions may harm the defendant's right to a fair trial. See Allen v. Louisiana State Bd. of Dentistry, 543 So.2d 908 (La.1989)
In light of the fact that Mr. Jenkins anticipated being called to testify, Mr. Doskey was properly allowed to assume his role for purposes of the 17 November 2000 contempt hearing. The trial court, in a contempt of court motion, has the discretion to appoint an attorney to represent the court, for the purpose of performing the prosecutorial function.
This assignment of error is without merit.

Insufficient Evidence
Mr. Burns correctly notes that the trial court attached to its ruling (provided to this Court) excerpts from the 19 October 2000 trial transcript, which were not introduced into evidence at the 17 November 2000 contempt hearing, to support its decision. He claims that the trial court distorted what testimony was taken at the contempt hearing. Mr. Burns argues that none of the evidence referred to in the per curiam was adduced at the 17 November 2000 contempt hearing. Instead, the court utilized testimony from the 19 October 19, 2000 trial and the 23 October 2000 contempt hearing.
The 17 November 2000 judgment should have been based on the testimony and evidence adduced at the hearing conducted on that date. This Court's review of the trial court's decision will consider only the evidence and testimony presented at the 17 November 2000 hearing.
Mr. Burns contends that the testimony at the hearing on 17 November 2000 was not sufficient to find his "willful neglect of a duty" or "willful disobedience of any lawful judgment, order, mandate, writ or process of court" under La.C.Cr.P. art. 23.
In its Findings of Fact, the trial court declared:
Officer Ray testified upon seizing the defendant's uniform pants, he felt the pants and did not find napkins in the rear pocket.
Officer Harrison testified he did not find any napkins in the defendant's rear pants pocket.
Theresa Thompson, a clerk with the New Orleans Police Department Central Evidence and Property Division (sic) testified upon Office Ray submitting the pants into her custody, she did not find napkins.
Zaren James, a law clerk assigned to the District Attorney's office and specifically the George Lee trial, testified he did not see napkins in the rear pants pocket nor hear Mr. Burns state he found napkins in the rear pants pocket.
Assistant District Attorney Tony Rovello testified he did not see napkins in the defendant's uniform pants nor hear Mr. Burns state he found napkins in the defendant's uniform pants. Moreover, Mr. Rovello testified he placed the uniform pants in a bag after he, Mr. James, Ms. Landrum and Mr. Burns organized the evidence for the next day's trial. Mr. Rovello then left the courtroom with the others remaining behind.

*1031 Assistant District Attorney Keva Landrum testified she observed the napkins upon Mr. Burns informing her of such. Ms. Landrum further testified neither she, Mr. James or Mr. Burns reexamined the uniform pants once they were placed in the bag by Mr. Rovello.
The Court finds the testimony of the witnesses to be convincing and credible.
* * * *
The Court finds Mr. Burns guilty of constructive contempt of court specifically tampering with evidence.
The Court sentences Mr. Burns to 6 months in the Orleans Parish Prison, credit for time served.
The Court further excludes the napkins from trial which is the subject of this contempt hearing.
In the trial court's per curiam provided to this Court, it directly quotes most of the excerpts of the 19 October 2000 trial transcript, which it attached to its ruling.[2] The trial court stated: "It is obvious respondent Burns intended to use the napkins as evidence against the defendant, napkins which only he and Assistant District Attorney Landrum knew existed." The court then used a question and answer format to show that the witnesses did not say that they overlooked the evidence, did not testify that those who felt the pants found napkins, did not say whether they observed napkins in the defendant's pants, did not say whether anyone overlooked the napkins or felt the pants and found napkins, and did not say whether anyone else observed napkins in the defendant's pants. The trial court noted that a defendant cannot be found guilty based on circumstantial evidence unless the facts proven by the evidence exclude every reasonable hypothesis of innocence. The trial court considered: that the witnesses testified that no one overlooked, observed, or felt napkins in the defendant's pants; the victims stated that napkins were used in the perpetration of the alleged crimes; police officers seized napkins from the crime scenes; the State introduced two soiled napkins in all three trials; napkins from the defendant's pants were not an issue in previous trials; and Mr. Burns' surprised revelation of the napkins in the middle of the third trial. The trial court declared:
The Court concluded the body of evidence, reasonable findings and permissible inferences excluded every reasonable hypothesis of innocence. See State v. Chism, 436 So.2d 464 (La.1983).
Based on the testimony of the witnesses and the Findings of Fact, the Court found beyond a reasonable doubt the respondent Lionel Burns was guilty of constructive contempt of court, specifically tampering with evidence.
Finally, the napkins were excluded pursuant to Louisiana Code of Criminal Procedure Articles 718(2)(3) and 729.5(A)....

Discussion
It is imperative to emphasize the high profile nature of the case of George Lee, a *1032 former veteran police officer charged with six counts of forcible rape and four counts of second degree kidnapping. It is likewise imperative to give recognition to the tortured path this case has taken in regards to due process violations by the prosecution, the resultant waste of judicial time and the potential nurturing of disdain for the criminal justice system.
This case began with an indictment on 19 November 1999. Although some counts were severed, the initial trial on 20 January 2000 resulted in an acquittal on one count of extortion. The jury was unable to agree on a verdict as to one count of sexual battery and two counts of kidnapping. This trial was conducted without the now infamous belatedly "discovered" napkins and without the prosecution's having disclosed potentially exculpatory evidence to the defense.
In a new case under separate number, the prosecution re-instituted the formerly nolle prosequied charges and added six forcible rape charges. Although the trial court ordered these counts severed, this Court ordered that they be tried together. Lee was tried, and the trial court declared a mistrial when it was discovered that the prosecution failed in its obligation to turn over potentially exculpatory evidence to the defense. In a published opinion, this Court held inter alia:
The State is ordered to scrutinize the entirety of its file. We express no opinion on the vulnerability of the prosecutors and/or the Office of the District Attorney to contempt charges, as that issue is not before us. (emphasis supplied).
In a footnote following this quote our Court noted:
We nonetheless remind the assistant district attorneys in this case, that under Rule 3.8 of the Rules of Professional Conduct, "[t]he prosecutor in a criminal case shall: .. Make timely disclosure to the defense off all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense ..." Moreover, a prosecutor has a "duty to learn" of such evidence. [citation omitted] (emphasis supplied).
State v. Lee, XXXX-XXXX, p.7, fn.8 (La.App. 4 Cir.2000) 767 So.2d 97, 101, fn.8.

The evidence
We do not believe that any reasonable prosecutor could have failed to understand the explicit warning this Court gave to the prosecution when the above writ was decided. Against this backdrop it is now necessary to scrutinize the third trial.
When the prosecution undertook to examine a state witness on redirect examination, the prosecutor produced napkins which he allegedly just discovered in the pants pocket of George Lee the night prior to trial. Not only did the prosecutor fail to disclose this miraculous "belated discovery" to the defense, the prosecutor excused his non-disclosure by saying that he did not know the napkins were there. Why did the prosecutor feel free to introduce this very damaging evidence, that had not come up in the previous trials, during the third trial? It is inescapable that the prosecutor thought that he could introduce these napkins without first having advised the defense of their existence. To believe that the prosecutor was not aware of the significance of the napkins stretches all credulity.
When the trial court found the prosecutor in contempt during the first contempt hearing, one of the contemnor's complaints was that he had not been accorded due process, i.e. he was not properly advised of the charges against him, he was not represented *1033 by counsel and he was not permitted to call witnesses on his own behalf. This Court agreed and a second hearing was held, At this hearing, the prosecutor/contemnor did not testify as he had at the first hearing. His attorney called several witnesses who testified that they did not find or did not see the napkins at issue. The testimony was largely in reference to accepted procedure when evidence is taken into custody and/or produced in court for trial. Sgt. Ray testified that he had searched all of the clothing and that the normal procedure consists of searching all pockets and concealed compartments. It is important to note that Sgt. Ray had unsealed the evidence bags for the first trial and the first hearing. Sgt. Harrison testified that he did not specifically go inside and search the pockets of the pants, but he "felt them up" and that he wanted to make sure that there wasn't anything in the pants. Sgt. Gay testified that he did not handle any of the evidence. Zaren James, a law clerk at the District Attorney's Office at the time of the third trial, testified that he was assisting in the preparation of the case prior to trial. He said that no one ever discussed napkins in his presence. Assistant District Attorney Rovello testified that he was present in the courtroom with the prosecutors Mr. Burns, Ms. Landrum, and Mr. James. Although he saw the napkins being introduced at trial that day, he did not see them being pulled out of the uniform and did not hear anyone remark about having found them. Keva Landrum testified that she knew of the significance of napkins during this trial because she was familiar with the police report in this case. She testified that Mr. Burns "mentioned something to the effect like, `Look, there's some napkins."' She insisted that there was no discussion of napkins whatsoever. She also testified that she was aware that napkins were used in one of the rapes, but she said there was nothing to connect the napkins to any of the crimes. She claimed that she didn't even pay attention to the napkins. Ms. Thompson, the technician who received the evidence in this case, testified that technicians go through the pockets unless the officer goes through the pockets. She had no independent recollection of going through the pockets herself or watching the officers search the pockets. When the trial judge recalled Sgt. Ray, he ended up by saying that he could not be sure whether napkins would have been in the trousers, but he also stated, "I don't think that I would have missed them, but I really can't say that they were not there."
Counsel for Mr. Burns argues that there is a broken chain of evidence in this case and, thus, there is only proof of circumstantial nature. The trial court believed that the napkins were planted. Therefore, if the napkins were not in the pockets, there was no chain of evidence to consider. If all the witnesses, with the exception of the district attorney's personnel, testified only about procedure and their inability to recollect whether the procedure had been followed. We cannot agree that this leads to any circumstantial evidence giving rise to a hypothesis of innocence. After all, it was impossible for the police witnesses to prove the negative. On the other hand, the trial judge must have disbelieved the testimony of witnesses from the district attorney's office. Additionally, the trial judge had now been presiding over motions and three trials. His observations during the trial of the demeanor and behavior of the prosecutors in this case certainly factored into his credibility calls. Although we are not relying on the testimony elicited at the time of the first contempt hearing, in which the contemnor testified, we are convinced that the trial judge remembered well the demeanor and the testimony he had heard at that time *1034 and all the interactions with the prosecution during this tortured path to judgment. This is analogous to the trial court's factoring in all the events in a criminal trial once the verdict has been announced and a sentence has to be fashioned. The trial court cannot realistically be mandated to disregard the reality around him when making the credibility call on which he found Mr. Burns in contempt a second time.
The lack of credibility the trial court found, coupled with the incongruity of the napkins appearing from nowhere, eliminated for this trial judge all other reasonable hypotheses of innocence. The mere fact that the police witnesses and the technician could not say whether the napkins had been properly inventoried, does not negate the trial judge's credibility call, in particular his evaluation of the district attorney's witnesses. We are convinced that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the prosecutor tampered with the evidence.

The law.
In reviewing the trial court's decision the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Rather, the court must evaluate the evidence in the light most favorable to the State, and it must determine whether the possible alternative hypothesis is sufficiently reasonable that the fact finder could not have found proof beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78.
Mr. Burns argues that there is no willful violation of a court order and no testimony of any willful misconduct. He claims that a prosecutor "could well have forgotten" about the significance of the napkins. This argument leads nowhere, since the prosecutor had to know, in the preparation of the case, that the police report clearly establishes the importance of the napkins. "Forgetting" about the napkins was obviously not an option for Mr. Burns because he attempted to introduce them at trial without prior notice to the defense about their existence.
We find that the trial court's finding that the district attorney/contemnor was guilty of contempt by tampering with the evidence is correct. The trial court did not err when he made that decision. His credibility call is entitled to deference.

Discovery Violation
Both the State and the defendant are under an obligation, if they discover additional evidence which is subject to discovery, to "promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection." La. C.Cr.P. art. 729.3; State v. Strickland, 398 So.2d 1062, 1067 (La.1981); State v. McPherson, 630 So.2d 935, 943 (La.App. 4 Cir.1993). Under La.C.Cr.P. art. 729.5(B), the trial court may find an ADA or a defense attorney to be in constructive contempt of court for the willful failure to comply with discovery procedures.
Under discovery articles, the "[d]uty to disclose is a continuing one. If the state, subsequent to the ordered disclosure, discovers additional evidence or decides to use a particular item as evidence, it must notify the defendant of the existence of the additional evidence or its intended use at trial." State v. Ray, 423 So.2d 1116, 1118 (La.1982). La.C.Cr.P. art. 729.3 applies to inculpatory evidence. *1035 See State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194.
Ms. Landrum testified that Mr. Burns informed her that he had found the napkins the night before Sgt. Ray pulled them from the pants pocket during the State's redirect examination of the officer. Yet, she stated that Mr. Burns did not contact defense counsel or produce the evidence that he had found until the middle of trial the next day during re-direct examination. Other napkins were introduced in prior trials. The significance of "discovering" similar napkins before trial is inescapable. The discovery of this evidence in the possession of the defendant, if true, would more likely than not link the defendant to the alleged crimes. Pretermitting the issue of how the items were placed in the defendant's pants, they were discoverable by the defense as part of the prosecution's disclosure duty and theory of the case, namely that there was a pattern in defendant's use of napkins to clean himself after the sexual assaults.
Mr. Burns had an obligation, under the continual discovery doctrine, to promptly notify defense counsel and the trial court of the existence of the napkins. It is implicit in the trial court's ruling that the napkins discovered by Mr. Burns were material to the case and should have been disclosed.
The State's obligation to notify the defense of the napkins is further emphasized, in light of our decision in State v. Lee, supra. Our order could not have been clearer that the State "... scrutinize the entirety of its file for evidence favorable to defendant, including evidence that tends to undermine the credibility of its witnesses."
For the foregoing reasons, we find that the trial court did not err in finding Lionel Burns in contempt of court for violation of discovery provision La.C.Cr.P. art 729.3.

Excessive Sentence
Here, the trial court imposed a six-month prison sentence in finding Mr. Burns in contempt of court for tampering with evidence and violation of discovery rules.
Mr. Burns argues that the six-month sentence is excessive.
La.C.Cr.P. art. 25(B) provides: "Except as otherwise provided in this Article, a court may punish a person adjudged guilty of contempt of court in connection with a criminal proceeding by a fine of not more than five hundred dollars, or by imprisonment for not more than six months, or both."
In the case at bar, the State tampered with the evidence and intentionally withheld evidence from the defense until the second day of trial when Mr. Burns asked Sgt. Ray to check the pockets of the uniform pants. As a result, the prosecution is solely responsible for the mistrial. The numerous expenses generated by the mistrial include witness inconvenience, repreparation for trial by all parties, delay in the judicial process and extended incarceration of defendant, contemptuous behavior or procedural misconduct.
Customarily, when we review a sentence in a criminal case, we do not find a sentence to be excessive just because we would have imposed a different sentence. The trial court's sentence is not reviewed for excessiveness when the trial court has not given reasons for the sentence as he or she is obliged to under LSA-C.Cr.P.art. 894.1, unless there is patent error in the sentence itself. In State v. Minnieweather, 590 So.2d 61 (La.1991) our Supreme Court changed a sentence of a contemnor for being excessive. In that case the trial court imposed a 90 day sentence and the *1036 Court of Appeal remanded the case to the trial court for reasons. Then and only then did the Supreme Court reduce the sentence, after a full record was adduced, from 90 days to 10 days. Likewise, the Supreme Court affirmed the finding of contempt for three separate acts of contempt, but ordered that the sentences run concurrently rather than consecutively because all three contemptuous outbursts were part of a single contemptuous episode. In effect, that sentence was changed from 18 months to 6 months. State v. Bullock, 576 So.2d 453 (La.1991). Our Court recently reduced the sentence of a criminal defendant (not a contemnor) from 30 years to 15 years. The case is couched in terms of error in denying a motion to reconsider the sentence. State v. McBride, 99-2904 (La.App. 4 Cir. 11/29/00), 776 So.2d 546. Although there is some precedent for reducing sentences on the appellate level, it seems to us that because, in this case, the contemnor has been convicted of serious violations with potential consequences of his professional life, the trial court ought to give reasons for the imposition of sentence, so that there can be a review for excessiveness. To us it may well seem a harsh sentence, but then we were not present during the numerous trials and motions.
The trial judge imposed six months' imprisonment, once after the first contempt hearing and once after the second contempt hearing. While it is more than likely that the trial court will once again impose a six months sentence after a remand for re-sentencing, we believe that we should give the trial court the opportunity to state its reasons for imposing the sentence. Then and only then is the sentence reviewable for excessiveness. Accordingly, we vacate the sentence of the trial court and remand the matter for re-sentencing accompanied by the trial court's reasons.

Publicity Order
Mr. Burns argues that the trial court's publicity order was a prior restraint upon the speech of every individual conceivably involved in the case and had no rational basis to protect his right to a fair trial (since his trial was over) or to protect George Lee's right to a fair trial (because he was not a party to the contempt proceeding). He contends that the order issued was aimed at prohibiting any person from making not only public, but private statements criticizing the trial court or the proceeding. He argues that the order did not define any aspect of the integrity of the justice system, which would be implicated by the statements sought to be restrained. It extended to persons not even in the media.
The publicity order issued by the trial court provided:
Lionel Burns, Counsel for Mr. Lionel Burns, Counsel for George Lee, Orleans Parish District Attorney's Office, their respective agents and employees, law enforcement personnel, witnesses, spokespersons, family members and friends of Lionel Burns and George Lee shall make no extrajudicial statement relating to this proceeding.
Any violation of this order will result in contempt of Court and sanctions.
In its per curiam the trial court stated:
The sole purpose for issuing the Publicity Order is to prevent any publicity, which would prejudice the defendant and consequently prevent the defendant from receiving a fair trial.
It is absurd for counsel to suggest the respondent Lionel Burns is forbidden from communicating with his counsel; his family members from communicating with the respondent, or the District Attorney from discussing the proceeding with his staff.

*1037 It should be noted the Publicity order applies to Defense Counsel Robert Jenkins, defendant George Lee and his family members.
La. Const. Art. I, § 7 provides: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." U.S. Const. Amend. I provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
The concept of prior restraint of speech was discussed in Gulf States Theatres of Louisiana, Inc. v. Richardson, 287 So.2d 480, 489-90 (La.1973):
Actually, prior restraint, in the context of its historical origin and as discussed in most early jurisprudence, is defined as that restraint or suppression of an expression without judicial determination of the right to suppress Before (sic) any publication, any exhibition, any communication of that expression. The prohibition against prior restraint predates even our Bill of Rights. In 70 Columbia L.Rev.1403, 1409, Blackstone's theory of the prohibition against previous restraint involving freedom of the press is discussed. Blackstone took the view that there could be no previous restraints upon publications, saying: `Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this is to destroy the freedom of the press; but if he publishes what is improper, mischievous, or illegal, he must take the consequences of his own temerity.'
The Louisiana Supreme Court has held that an injunction, in so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on first amendment rights. Guste v. Connick, 515 So.2d 436, 438 (La.1987) (citing Organization For A Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971)).
Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. The U.S. Supreme Court has interpreted the constitutional guarantees to afford special protection against orders that prohibit the publication or broadcast of particular information or commentary orders that impose a "previous" or "prior" restraint on speech. Such prior restraints are presumed to be constitutionally invalid. Even when the competing interest is a criminal defendant's right to a fair trial, "the barriers to prior restraint remain high and the presumption against its use continues intact." Nebraska Press Association v. Stuart, 427 U.S. 539, 570, 96 S.Ct. 2791, 2808, 49 L.Ed.2d 683 (1976).
Before a judge may impose a prior restraint, even in the interest of insuring a fair trial, there must be "an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." U.S. v. Columbia Broadcasting System, Inc., 497 F.2d 102, 104 (5th Cir.1974). A lawyer's First Amendment right to comment about a pending or imminent criminal case can be proscribed only if his/her comments pose a "`serious and imminent threat' of interference with the fair administration of justice." Bernard v. Gulf Oil Co., 619 F.2d 459, 474 (5th Cir.1980), cert. granted, 449 U.S. 1033, 101 S.Ct. 607, 66 L.Ed.2d 495 (1980), and aff'd, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). There are *1038 other prerequisites to justify a prior restraint. The order must not sweep too broadly; it must be narrowly drawn. The order will not be upheld if there are reasonable alternatives available which have a lesser impact on the First Amendment freedoms. The restraint must also be accomplished with procedural safeguards to reduce the danger of prohibiting constitutionally protected speech. Id. See also Davis v. East Baton Rouge Parish School Board, 78 F.3d 920 (5th Cir.1996).
Similarly, in order to close a record in a criminal proceeding, the moving party must show and the trial court must specifically find that there is a reasonable probability that (1) the defendant's right to a fair trial will be prejudiced by publicity; (2) closure would prevent that prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. The trial court must support its decision to close a proceeding with specific reasons and findings. Broad and general findings are not sufficient to justify closure. The rights under the First Amendment cannot be overcome by the conclusory assertion that publicity might deprive the defendant of the right to a fair trial. State v. Widenhouse, 556 So.2d 187, 190 (La.App. 2 Cir. 1990). See also State v. Womack, 551 So.2d 855 (La.App. 2 Cir.1989), writ denied, 553 So.2d 465 (La.1989).
Mr. Burns persuasively argues that at the time the trial court issued its order, it had made no finding that there was any danger to the administration of justice in order to justify restraining individuals' right to free speech or that George Lee would be prejudiced in his January 2001 trial. In its per curiam, the trial court later declared that it sought to prevent any publicity, which would prejudice the defendant and prevent him from receiving a fair trial. That general statement, made after the fact, does not meet the required showing that there is an imminent danger (not even a likely threat) to the administration of justice. The order was not narrowly drawn; in fact, it was so broad that it included the attorneys, the defendant in the trial, the defendant in the contempt proceeding and their families and friends as well as witnesses and spokespersons. The trial court did not express that it had considered reasonable alternatives having less impact on the First Amendment freedoms. There were no procedural safeguards to reduce the danger of suppressing protected speech. However, the issue is now moot, because defendant has been tried.
The trial court erred by issuing the publicity order.
This assignment of error has merit. Accordingly, the publicity order as written is vacated.

CONCLUSION
We affirm the trial court's judgment of contempt on the charges of tampering with the evidence and discovery violations. We vacate the sentence imposed and remand the matter for re-sentencing. The trial court is ordered to state the reasons for the sentence he imposes. The publicity order is hereby vacated and set aside.
A copy of this opinion shall be forwarded to the Office of Disciplinary Counsel.
APPLICATION FOR SUPERVISORY WRITS GRANTED, CONTEMPT CITATIONS AFFIRMED, SENTENCE VACATED AND REMANDED, PUBLICITY ORDER VACATED.
PLOTKIN, J., dissents in part and concurs in part with reasons.
PLOTKIN, J., dissenting in part and concurring in part with reasons.
I dissent from the majority on the conviction of "tampering" and the sentencing *1039 of Lionel Burns. The direct and circumstantial record evidence of the November 17, 2000 hearing is insufficient to convict relator of either tampering or planting evidence. The evidence demonstrates a reasonable hypothesis of innocence since no one testified that Burns planted the napkins in defendant George Lee's pants or that he tampered with the evidence. More significantly, the prosecutor failed to prove the chain of exclusive custody of the pants from the time of seizure to the discovery of the napkins in question. Thus, if the conviction for tampering is reversed, the sentence of six months incarceration for a discovery violation is excessive.
I concur on all other issues.

Undue Scope of Review
The majority employs an invalid all-inclusive and expansive view of the record. This Court in State v. Lee, 2000-2357, unpub. (La.App. 4 Cir. 10/31/00) vacated and remanded the October 25, 2000 contempt hearing because the trial court failed to comply with the proper rules of criminal procedure. The trial court conducted a second contempt hearing on November 17, 2000[1]. Thus, the majority record review is limited to the evidence generated at the second hearing. Nevertheless, the majority relies upon and accredits the trial court credibility judgments based upon his observations while presiding over various motions and three trials that occurred prior to November 17, 2000.
The majority states "[a]lthough we are not relying on the testimony elicited at the time of the first contempt hearing, in which the contemnor testified, we are convinced that the trial judge remembered well the demeanor and the testimony he heard at that time and all the interactions with the prosecution during this tortured path to judgment."
Further complicating the credibility determinations is the undeniable fact that the trial court's October 25, 2000 per curiam on contempt, is the cornerstone and premise for its November 17, 2000 per curiam. The extrapolation of credibility from prior proceedings in this case on this issue, is specious, conjectural and problematical. The majority errs by accepting other evidence to be considered on the critical issue of credibility and thus on their conclusion of guilt. Therefore, only the evidence in the November 17, 2000 hearing should form the basis for a judgment on the matter, which is insufficient to support a conviction.

Chain of Custody of Lee's Pants
On August 24, 1999, Sergeant Ronald Ray and Sergeant Howard Gay seized Lee's uniforms. Neither could be certain that they directly searched his pants pockets. The uniforms were placed in a bag and turned over to the New Orleans Police Department evidence clerk Theresa Thompson, who received, tagged and bagged the trousers. Thompson testified that she was uncertain and had no independent memory of whether she searched the pants pockets.
On April 3, 2000, the seized evidence was opened in court, during the first trial. After a mistrial on that date, there is no testimony about who had custody, possession, access to or knew the location of Lee's uniform pants. It is not until October 18, 2000, the evening before trial, when Zaren James, a law clerk in the District Attorney's office, Anthony Novello[2], an ADA, Keva Landrum, an ADA, and relator Lionel Burns, an ADA, while arranging *1040 the evidence in the court room for trial the next day, discovered the napkins in Lee's pants. The evidence was eventually placed back into a bag, and the bag into a box. Again, there is nothing in the record that disclosed or established the chain of custody until October 19, 2000, when Sergeant Ray on redirect examination removed the napkins from the rear pocket of Lee's pants.
The purpose of the chain of custody rule is to connect the tangible evidence to the accused. It preserves the integrity of the evidence. Mendoza v. Mashburn, 99-499 (La.App. 5 Cir. 11/10/99) 747 So.2d 1159, 1172, writ denied, XXXX-XXXX (La.2/18/00), 754 So.2d 976.
In this case, there is a significant gap in the chain of custody. There is no evidence or foundation for admissability as to the "tampered" napkins, because from April 3, 2000 to October 19, 2000, a seven month period, no one explained or accounted for the care, custody or control of the pants. As long as public or private access to the pants existed, it can be said that anyone planted or tampered with the evidence. Further, this is not the type of case where the seized evidence is specifically identified or recognizable and is subsequently introduced because of its visual identification, such as a gun or knife. The napkin, although possibly relevant herein, is not so unique an object that the majority can conclude that it was inside the pocket of George Lee's pants when they were originally seized. The burden of proof of tampering is on the prosecutor to show beyond a reasonable doubt, based on direct and circumstantial evidence, that the defendant intentionally planted or tampered with the tangible object.
Mere speculation as to why the napkins were not produced in prior trials does not prove that this defendant tampered with or planted the evidence. No one testified that Lee's pockets were searched before the issue arose at trial. Thus, a reasonable hypothesis of innocence, which the prosecution must overcome, is that the napkins always existed in Lee's pants, but remained undiscovered or that any third person, such as clerks, other DA's or police officers, had access to the pants and tampered with them. The record evidence herein is that the mover failed to exclude the reasonable probability that anyone could have tampered with the pants during the unaccounted seven month period.

Insufficiency of the Evidence
The testimony presented at the November 17, 2000 hearing was insufficient to support a finding that Mr. Burns was in constructive contempt of court for tampering with evidence. There was no showing beyond a reasonable doubt that Mr. Burns planted the napkins in the uniform pants of George Lee. The State's evidence against George Lee was handled by many people over the course of three trials. Assuming that the napkins were not in the pants pocket when they were discovered at Lee's home, anyone subsequently coming into contact with the pants could have placed the napkins into the pocket. Only by speculation could this court conclude that Mr. Burns placed the napkins inside the pocket, as alleged.
The fact that Lionel Burns discovered the napkins does not prove that he placed them in Lee's uniform pants. The majority concludes beyond a reasonable doubt, based on credibility determinations and circumstantial evidence, that Burns tampered with or planted the napkins. Mere discovery of napkins under these circumstances does not prove that Burns placed them there, because anyone with access to the pants could have put the napkins into the pocket. The circumstantial evidence fails to prove beyond a reasonable doubt that it was Burns who planted the napkins.
*1041 I would vacate and reverse the judgment of the trial court, finding Lionel Burns in constructive contempt of court for tampering with evidence.

Excessive Sentence
Here, the State intentionally withheld evidence from the defense, thus the prosecution bears sole responsibility for the mistrial. However, Mr. Burns, according to the record, does not have a history of prior contemptuous behavior or procedural misconduct. In these circumstances, the sentence of six months imprisonment is excessive for the violation of discovery rules committed by Lionel Burns. Nevertheless, the actions of Mr. Burns are serious and should not go unpunished.
Accordingly, I would vacate and reverse the six month sentence imposed by the trial court and impose the maximum fine of $500.
The majority remands to the trial court for resentencing. This action violates the doctrine of certainty and finality. Additionally, the trial court has already twice sentenced relator in response to this charge. The trial court provided adequate reasons for the sentence imposed. No useful purpose would be served to remand a sentence for an affirmed conviction.
NOTES
[1] Under La.C.Cr.P. art. 24, Mr. Burns had to be served with a certified copy of the motion and of the rule to show cause. However, Mr. Burns notes in his application that he waived service.
[2] The excerpts were taken from Sgt. Ray's cross-examination testimony in which he discussed the significance of the napkins found at the crime scenes. Sgt. Ray testified that he had told the defendant that the napkins would be submitted for DNA testing; however, when the Crime Lab found no seminal fluid on the napkins, there was no need for the DNA tests. On redirect. Mr. Burns asked whether Sgt Ray recognized the pants, and he said that he did. Mr. Burns said: "Go in the back pocket of those pants (George Lee's uniform pants)." Sgt. Ray pulled out the napkins. Mr. Burns asked what the sergeant was holding in his hand, and he replied: "Napkins." On recross-examination Mr. Jenkins asked: "Officer, did you check his back pockets to see if he had them first, the napkins?" Sgt. Ray answered: "No. I did not."
[1] Lionel Burns did not testify at the November 17, 2000 hearing.
[2] James and Novello denied seeing or hearing any discussion about napkins found in Lee's pants.