J^PLOTKIN, J.
This writ application presents the question of whether the trial court erred in granting the defense full access to the State’s files, i.e. “open-file discovery.”[1]

PROCEDURAL HISTORY:

On February 24, 2000, defendant George Lee, a New Orleans police officer, was charged by bill of information with six counts of forcible rape and four counts of second-degree kidnapping. Trial began on April 3rd before a twelve-person jury. On the second day of testimony, a bench con-ferenee was held concerning the testimony of a State witness. After direct examination of the witness by the State and cross-examination by the defense, the defense requested a mistrial. Referencing possible exculpatory information in the witness’s testimony, the trial court granted defendant’s motion. On April 5th, the trial court ordered the State to turn over its entire file to the defense; and the State filed the instant writ application on April 7th. The defense responded to the State’s application, and the Louisiana Association of Criminal Defense Lawyers filed an ami-cus curiae brief.

¡^DISCUSSION:

The State’s Position

In challenging the defense’s entitlement to its entire file (“File”), the State cites the general rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which is that the prosecution is only obligated to provide the defense with material, exculpatory evidence. The State avers that the File does not contain exculpatory information but that it does contain its work products. It further avers that the File contains information about several other women who have allegedly been sexually assaulted by defendant but who have not yet proceeded against him. The State claims that defendant, who is apparently still employed by the police department, has access to computer databases, which he has used to gather information about alleged victims and witnesses. According to the State, the trial court has warned defendant to stay away from the State’s witnesses.
In sum, the State relies on (1) the limitation of its duty to open its files to the defense, as delineated in Brady; (2) the existence of work products in the File and the unfairness that would result if the defense had access to these; and (3) the risk of harm to and/or intimidation of alleged victims and witnesses, whose names *99 and addresses are contained in the File. The State proposes that, assuming a Brady violation occurred prior to the granting of the mistrial, the appropriate remedy is not open-file discovery, but rather an in camera inspection of the File by the trial court, at which time any Brady material can be extracted and given to the defense.

The Defense’s Position

Defendant counters that open-file discovery is necessary because, first, the State is ignorant of the full contents of the File. According to the defense, the assistant district attorney stated in open court that, even by the time of trial, she had not reviewed the contents of a “box” of audio-taped statements. The defense argues |sthat the State must inform itself of all of the relevant evidence so that it can comply with its obligations under Brady. Because the State failed to inform itself, the defense further argues, the trial court did not abuse its discretion in ordering open-file discovery, both as a practical and a punitive measure. That is, the defense asserts that, assuming there is a “box” of unreviewed statements, it would be a waste of judicial resources for the trial court to conduct an in camera hearing and, thus, to do essentially what the State already should have done. Finally, the defense argues that, with regard to the State’s work product and witness safety concerns, the State should not escape the open-file order but rather should be forced to seek a protective order for those documents alone.
Accordingly, the defense relies on (1) its belief that open-file discovery is the most pragmatic means of resolving the problem created by the State’s negligence; (2) as a corollary, the inadequacy of the State’s suggested remedy; and (3) the availability of a protective order for the State’s sensitive documents.

Analysis

Chapter 5 of Title XXIV of the Louisiana Code of Criminal Procedure, arts. 716 et seq., governs discovery in criminal cases. La.C.Cr.P. art. 723 provides:
Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of [1] reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of [2] statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney or to agents of the state.
La.C.Cr.P. art. 718, the only exception to art. 723 that seems relevant,[2] provides:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible | ¿objects, buildings, places, or copies or portions thereof, which are within the possession, custody or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
When these two articles are read together, it is clear that the State need not disclose its internal documents, i.e. its work products, and the statements[3] of witnesses un *100 less such things (1) are material and exculpatory, as determined by Brady and its progeny;[4] (2) are intended for use as evidence; or (3) “were obtained from or belong to the defendant.” See State v. Dunn, 94-776, pp. 6-7 (La.App. 5 Cir. 2/15/96), 651 So.2d 1378, 1383.
Here, because there is no indication that the taped statements were the defendant’s property or that the State intended to use them as evidence — since the State did not even review them — the defendant is only entitled to them, as a matter of statutory law, if they are material and exculpatory. While the trial court may conduct an in camera inspection of evidence to determine whether it is Brady material, the initial privilege — and high responsibility — belongs to the State: “a | ..¡prosecutor has a duty to learn of any favorable evidence known to anyone acting on the government’s behalf, including the police. But whether or not this obligation is met, the prosecutor is still responsible for failing to disclose ‘known, favorable evidence rising to a material level of importance.’ ” Marshall, 660 So.2d at 826 (quoting Kyles, 514 U.S. 419, 115 S.Ct. at 1567-68) (emphasis added). In any event, whereas art. 718 reaffirms the ability of the trial court to review the State’s files for possible Brady material when appropriate, there is nothing in art. 718 which purports to give the defendant full access to those files.
The defense, however, relies on the great discretion afforded the trial court in remedying discovery violations under art. 729.5(A), which provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
Here, the trial court both granted a mistrial subsequent to defendant’s motion and granted defendant open-file discovery. While the granting of a mistrial is a potential remedy specifically listed in art. 729.5(A),[5] the granting of open-file discovery is not. However, the article does allow the trial court to “enter such other order, other than dismissal, as may be appropriate”; and we recognize that the scope of sanctions for a discovery violation falls within the trial court’s discretion and consequently may be altered only when there is an abuse of that discretion and resulting prejudice to the complaining party. See State v. Owens, 30,903 (LaApp. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
*101 | (^Nevertheless, as previously stated, art. 723 provides that “this Chapter does not authorize the discovery or inspection of” the State’s internal documents or of the statements of State witnesses, “[ejxcept as provided in Articles 716, 718, 721, and 722.” Art. 729.5 is not a specifically listed exception. Accordingly, the order issued in this case exceeded the scope of Chapter 5. which contains no provision entitling a defendant to unfettered access to the State’s files and which specifically prohibits access to work products and the statements of State witnesses unless certain, specified conditions are met.[6] This case adequately demonstrates one policy rationale for this prohibition, namely the risk of harm to and/or intimidation of prospective witnesses.
The defense cites State v. Nguyen, 98-1463 (La.6/19/98), 720 So.2d 1209, for the proposition that open-file discovery is a valid sanction under art. 729.5(A). In that case, the Supreme Court reversed this court and reinstated the trial court’s ruling, writing, “The trial judge exercising inherent power of courts to regulate criminal proceedings did not abuse his broad discretion to control pre-trial discovery.” However, Nguyen is a one-paragraph-long writ disposition. It did not set forth the scope of the trial court’s ruling, nor did it mention open-file discovery.[7] Moreover, despite its inherent power, a criminal trial court must still abide by the Code of Criminal Procedure. Therefore, we cannot consider Nguyen as controlling precedent.

17CONCLUSION

For the reasons stated above, we vacate the trial court’s order requiring the State to provide the defense with its entire file. We express no opinion on the vulnerability of the prosecutors and/or the Office of the District Attorney to contempt charges, as that issue is not before us.[8]
The State is ordered to scrutinize the entirety of its file for evidence favorable to defendant, including evidence that tends to undermine the credibility of its witnesses. See Giglio, supra. The State is further ordered to provide the defense with a list of the statements in its possession, including the date of each statement and the name of the person to whom it was made. Under La. C.Cr.P. art. 723 and Stallworth, supra, the State need not disclose the contents of the statements nor the names and addresses of the prospective witnesses— unless arts. 716, 718, 721 or 722 are applicable. Upon request by the State, motion of the defense or upon its own initiative, the trial court may review any evidence in camera to determine whether the defense is entitled to it. See art. 718.
The writ application of the State of Louisiana is GRANTED.

WRIT GRANTED.

. This is the third writ application filed in this matter. The first two writs, 2000-K-0760, filed by the State, and 2000-K-0782, filed by the defense, are not relevant at this point.

. Art. 716 governs statements made by a defendant himself. Art. 721 governs statements of coconspirators, and art. 722 governs confessions or inculpatory statements of code-fendants.

. Art. 723 does not state whether the identity of witnesses, as opposed to their statements, is subject to disclosure. However, in State v. Stallworth, 98-2356, pp. 1-2 (La.App. 4 Cir. 10/21/98), 720 So.2d 746, 747, this court *100 wrote that "the defendant does not have the right to the names and addresses of state witnesses, [but] discovery of this information is not prohibited where there has been a determination that there [are] exceptional circumstances and peculiar, distinctive reasons why fundamental fairness dictates discovery." This rule dissipates any tension between State v. Loyd, 425 So.2d 710, 719 (La.1982) (holding that "a defendant is not usually entitled to the names of state witnesses”) and State v. Walters, 408 So.2d 1337 (La.1982) (holding that art. 723 does not expressly prohibit such disclosure).

. See, e.g., Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (Brady rule applies to evidence undermining a witness’ credibility); Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (reviewing the considerations for determining whether evidence is material); State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819 (interpreting Kyles).

. In passing, we note that a mistrial has been held to be a proper remedy only when the State's conduct substantially affects the defendant’s right to prepare a defense. State v. Woods, 97-0800 (La.App. 1 Cir. 6/29/98), 713 So.2d 1231, writ denied, 98-3041 (La.4/1/99), 741 So.2d 1281.

. Our analysis has proceeded this far because the order was delivered as a sanction. It is black-letter law that, in the normal course of discovery, "the prosecutor is not required to deliver his entire file to defense counsel .... ” State v. Rosiere, 488 So.2d 965, 970 (La.1986).

. With regard to this court's ruling in Nguyen, unpublished opinions "shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation” Rule 2-16.3, Uniform Rules — Courts of Appeal.

.We nonetheless remind the assistant district attorneys in this case that, under Rule 3.8 of the Rules of Professional Conduct, "[t]he prosecutor in a criminal case shall: ... Make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense ...Moreover, a prosecutor has a "duty to learn” of such evidence. Marshall, supra.