PAUL A. BONIN, JUDGE
Ijn 2013, the district attorney filed a bill of information charging Frederick Johnson with the second degree murder of Ruben Brown III. During the discovery stage of the proceedings, the district attorney produced to the defendant a redacted police report. The redactions concealed the identities of numerous persons.who reported personally witnessing the shooting of Mr. Brown,
Mr. Johnson filed a motion for the production of an unredacted version of the ■police report so 'that he would learn the identities and whereabouts of the reporting witnesses. The basis for his motion was that some of the reporting witnesses possessed information that was, in the sense of Brady, favorable to his defense and that others of the reporting witnesses were not persons whom the prosecution intended to call as witnesses upon the trial. Mr. Johnson also filed a motion seeking the contact information of an individual identified in a Notice of Disclosure provided by the prosecution, and who was not included in the initial police report, and a motion seeking tangible objects, specifically, recorded^interviews with certain witnesses. The trial judge conducted an in-court contradictory hearing. The district attorney opposed any disclosure.
Following'the hearing, the trial judge granted the relief sought by the defendant and ordered that the prosecution furnish “a completely unredacted police report immediately-.” The trial judge also ordered that the prosecution provide contact information for the two witnesses contained in the Notice of Disclosure[1] and that all the tangible objects in Mr. Johnson’s motion be released to him. The district attorney applied for supervisory review and a stay of the order of production. We granted the requested stay because of our' concerns about the trial judge’s compliance with controlling jurisprudence relating to pretrial intervention of Brady disclosures as well as his application of Article 729.7 of the Louisiana Code of Criminal Procedure to this case. We also' stayed commencement of the trial until the issues raised in the application are resolved. ■
We find that the trial judge .abused his discretion in ordering production of a wholly unredacted version of the police report for two reasons: first, with respect to those Brady disclosures he determined were necessary, he failed to comply with the controlling directives of State v. Harper [2] when he did not conduct an in camera review of witnesses alleged to possess exculpatory information and, second, he incorrectly applied the provisions of Article 729,7 even though those provisions are not applicable to any case, such as this one, in which the prosecution wa^_ instituted before January 1, 2014. Likewise, we find that the trial judge did not comply with the requirements in Harper with re *614 spect to the Notice of Disclosure and motion for tangible objects.
Accordingly, we vacate the order of immediate production of a wholly unredacted version of the police report, production of the contact information of the witness contained in the Notice of Disclosure, and production of all tangible objects. We recall the stay of proceedings and remand with instructions for further proceedings. We explain our decision in more detail below.
I
We begin our explanation by reviewing the factual background of the charges against- Mr. Johnson based primarily on the redacted version of the police report and detailing the specific redactions to the report and the trial judge’s particular actions concerning the redactions. Importantly, we note that our recitation of the facts based on the information in the police report in no way vouches for the accuracy of the report, nor should it be read as a reflection of our opinion on Mr. Johnson’s guilt or innocence, which of course is yet to be determined.
A
In the early evening of May 1, 2013, Ruben “Sugar-man” Brown III was standing on a sidewalk in the 3400 block of Magnolia Street in New Orleans when, according to police, he was approached by Frederick Johnson, who is known as “Blackman.” Upon the approach, Mr. Brown attempted to flee when he was shot |4in the back by Mr. Johnson. After Mr. Brown fell to the ground, Mr. Johnson stood over Mr. Brown and fired several .more times into him. Mr. Brown died at the scene.
According to the police report, investigating officers interviewed nine individuals in connection with the incident. Four of these individuals witnessed the shooting and described the shooter in some detail. These persons are identified in the redacted report as Witnesses Two, Three, Four, and Eight. Only Witness Two, however, actually identified the defendant from a six person photographic lineup. Witnesses Three, Four, and Eight were unable to identify Mr. Johnson as the perpetrator. The remaining interviewees did not witness the shooting nor did they provide a description of the shooter. The police report also contains several other redacted individuals, but they were not interviewed by detectives.
The trial judge found that the lineup procedures, wherein Witnesses Three, Four, and Eight, failed to identify Mr. Johnson, even though they had previously provided a description of the shooter, were exculpatory under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district attorney, therefore, was ordered to provide the identities and contact information for those three witnesses. The trial judge’s order, although unclear from a review of the contradictory hearing transcripts, included not only the three Brady witnesses, but extended to every redacted individual in the police report. The reasoning given in the trial judge’s per curiam was that the individuals were not “state witnesses,” ostensibly because they will not be called to testify, nor were there any safety concerns articulated by the | ^prosecution as to why the identities of such non-state witnesses should be redacted. Thus, the police report, unredacted in its entirety, was ordered to be turned over to the defense.
II
In this Part, we set forth the relevant legal principles applicable to this case.
*615 A
The Louisiana Legislature, by way of 2013 La. Acts 250, amended several discovery rules in the Code of Criminal Procedure, including the enactment of Article 729.7, which regulates the protection of witness identities in pre-trial discovery proceedings. The Act specifically provides, however, that the provisions are only effective for cases indicted on or after January 1, 2014, and thus “shall be given prospective application from its effective date, unless the district attorney and the defendant stipulate otherwise in each particular case, in writing, on the record.” See 2013 La. Acts 250, Section 2. Mr. Johnson was indicted on October 11, 2013 and there is nothing in the record that indicates a stipulation between him and the district attorney. Indeed, the prosecution’s writ application specifically notes that the current discovery rules are inapplicable to this case. Thus, the trial judge eired to the extent that he applied the provisions of La. C.Cr.P. art. 729.7 to this case.[3]
J#B ,
We next review legal principles which are applicable to all criminal cases, regardless of the date of indictment.
Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the prosecution has an affirmative duty to disclose evidence which is favorable to the defense, “where the evidence is material either to guilt or to punishment” or impeaches the testimony of a witness where “the reliability of a given witness may well be determinative of guilt or innocence....” Brady, 373 U.S. at 87, 83 S.Ct. 1194; Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (internal quotation marks omitted); see also State v. Harper, 10-0356, p. 8 (La. 11/30/10), 53 So.3d 1263, 1269. Evidence is “material” when “there is any reasonable likelihood -it could have affected the judgment of the jury” and it is sufficient to undermine confidence in the verdict. See Wearry v. Cain, 577 U.S. —, —, 136 S.Ct. 1002, 1006, 194 L.Ed.2d 78 (2016) (internal quotation marks omitted) (citing Giglio, 405 U.S. at 154, 92 S.Ct. 763; Smith v. Cain, 565 U.S. 73, 73-79, 132 S.Ct. 627, 629-31, 181 L.Ed.2d 571 (2012)). This affirmative duty under Brady is “embedded in the principle that a criminal defendant is deprived of a fair trial when the state withholds exculpatory evidence that is material to guilt or punishment.” In re Jordan, 04-2397, p. 9 (La. 6/29/05), 913 So.2d 775, 781.
Louisiana jurisprudence has consistently held that “a defendant is generally not entitled of right to the names, addresses, and telephone numbers of witnesses in the absence of extraordinary circumstances.” Harper, 10-0356, p. 10, 53 So.3d at 1270 (citing State v. Weathersby, 09-2407, p. 2 (La. 3/12/10), 29 So.3d 499, 501). Disclosure of such identifying information may be warranted, however, upon a determination by the trial judge that there exist “peculiar and distinctive reasons why fundamental fairness dictates discovery.” Harper, 10-0356, p. 10, 53 So.3d at 1271 (quoting Weathersby, 09-2407, pp. 2-3, 29 So.3d at 501). And, even if extraordinary circumstances *616 exist, witness information should only be made available to the defense after the trial judge conducts an in camera,interview and finds that the witnesses possess exculpatory information. See id. (citing State v. Golden, 95-0288, p. 1 (La. 2/17/95), 650 So.2d 237, 238). See also La. C.Cr.P. art. 718 (2013) (defendant entitled to copy and inspect documents within custody of the state if they are favorable to the defendant and- material = to guilt or punishment).[4] In sum, where the defendant makes a request for evidence in the prosecution’s possession, and “if a substantial basis for claiming materiality exists,-it is reasonable to require the prosecutor to respond either by furnishing the information-.or by submitting the problem to the trial judge.” Harper, 10-0356, p. 10, 53 So.3d at 1270 (quoting United States v. Agurs, 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).[5]
We also take note that the provisions governing discovery by the defense are less restrictive than the provisions governing discovery by the state: La. C.Cr.P. art. 723 restricts a .defendant’s right to statements made by witnesses or prospective j ¿witnesses made to the district attorney, but does not explicitly prohibit discovery of names or addresses of state witnesses. Conversely, La. C.Cr.P. art. 728 prohibits the prosecution from discovery of both statements and names .of defense witnesses or prospective witnesses,[6] As the Louisiana Supreme Court aptly pointed out, “[o]n the basis of simple.. statutory construction, the difference is obvious and there seems to be, therefore, an intentional legislative disclaimer on the state’s discovery of the names of witnesses which is not paralleled as relates to defense discovery.” State v. Walters, 408 So.2d 1337, 1340 (La. 1982)..
Of course, the prosecution’s statutory and constitutional obligations do not relieve the defense of the duty to conduct its own investigation and prepare a defense for trial, as there is no duty -to furnish the defendant with information he already has or can obtain with reasonable diligence. See Harper, 10-0356, p. 11, 53 So.3d at 1271; State v. Jenkins, 14-1148, p. 16 (La. App. 4 Cir. 5/6/15), 172 So.3d 27, 39. Thus, there can be no Brady violation “where a defendant knew or should have known the essential facts permitting him. to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.” Harper, 10-0356, p. 11, 53 So.3d at 1271 (quoting State v. Hobley, 98-2460, p. 25 n. 10 (La. 12/15/99), 752 So.2d 771, 786).
In Harper, the defendant sought the addresses and phone numbers of two named eyewitnesses whose statements to police had been disclosed and which lorevealed an alleged discrepancy in the t- *617 shirt color of the shooter. The trial judge ordered the prosecution to produce the witnesses for an in camera interview to determine the extent, if any, of exculpatory information. The Louisiana Supreme Court found that the district judge had abused his discretion by ordering a pretrial in camera interview under the circumstances presented. Specifically, the court found that the defendant had not demonstrated an '“exceptional circumstance or a peculiarly distinctive reason” why he was entitled to contact information on the mere basis of a t-shirt color discrepancy and in light of the fact that the defendant had already received the witnesses’ names, their uriredacted statements, and their RAP sheets: “With this identifying information, the defendants through the exercise of reasonable diligence should he able to locate these individuals prior to trial.” Harper, 10-0356, p. 13, 53 So.3d at 1272 (emphasis added).
Likewise, the court in Weathersby found the defendant’s contention that he should “have the benefit of eyewitnesses who can articulate who were the aggressors” did not constitute a particular and distinctive reason why fundamental fairness entitled him to the names of witnesses in a redacted police report, especially in light of the prosecution’s stated concern for the witnesses’ safety. Weathersby, 09-2407, p. 3, 29 So.3d at 501.
Louisiana courts have held that the failure of an eyewitness to positively identify a defendant in a photographic lineup is not exculpatory when the defendant is not included in the photographic lineup. See, e.g., State v. Hawkins, 96-0766, p. 4 (La. 1/14/97), 688 So.2d 473, 477; State v. Nel son, 96-0883, pp. 12-13 (La. App. 4 Cir. 12/17/97), 705 So.2d 758, 765; State v. Dantzler, 591 So.2d 1385, 1388 (La. App. 4th Cir. 1991) (defendant not prejudiced by pre-trial non-identification because it was brought to jury’s attention and it was not established that defendant’s photograph was in the lineup).
It has also been held, however, that the failure of a key state witness to identify the defendant from a pre-trial photographic lineup when that witness testifies at trial is material evidence under Brady. See, e.g., State v. Curtis, 384 So.2d 396, 397-98 (La. 1980).
Ill
In this Part, with the foregoing principles in mind, we determine the correctness of the trial judge’s rulings with regard to the witnesses in the police report and the Notice of Disclosure.
A
In this case, three out of four eyewitnesses who described the shooter to police were unable to positively identify Mr. Johnson from a photographic lineup. There is no doubt from the police report that Mr. Johnson’s photograph was included to each of the four lineups. Moreover, this ease appears to rest heavily on the testimony of Witness Two, the only individual out of four eyewitnesses who picked Mr. Johnson out of a- lineup. See generally State v. Bright, 02-2793, p. 9 (La. 5/25/04), 875 So.2d 37, 43-4 (“When the State’s case hinges on the testimony of one eyewitness, the Brady violation looms larger”).[7]'We especially |nnote that, as con *618 trasted with Harper, Mr. Johnson was not provided the names or the RAP sheets of Witnesses Three, Four, or Eight; Nor is this a situation where eyewitness descriptions merely differ over the color of a t-shirt. It is highly unlikely that Mr. Johnson,' even exercising reasonable diligence, would be able to identify these unnamed witnesses who were interviewed over three years ago. Further,. unlike the case in Weathersby, the prosecution has not articulated any concern about witness safety, which in any event, would be dubious considering that these witnesses are likely beneficial to the defendant.
Nevertheless, Louisiana jurisprudence requires that, even if Mr. Johnson has established circumstances entitling him to the identifying information of witnesses, the trial judge must first conduct an in camera interview to determine the existence and extent of any Brady information Witnesses Three, Four, and Eight possess.
B
As to the remaining witnesses in the policé report, that is, witnesses other than Witnesses Three, Four, and Eight, we find no legal basis for redaction. And although we acknowledge the general rule that “a defendant is generally not entitled of right to the names, addresses, and telephone numbers of witnesses,” see Harper, 10-0356, p. 10, 53 So.3d at 1270, Louisiana jurisprudence reflects that the 112concern is centered on “state witnesses,” that is, witnesses whom the prosecution intends to call- at trial. See generally State v. Lee, 00-0831 (La. App. 4 Cir. 5/8/00), 767 So.2d 97. Mm-state witnesses, therefore, are witnesses who will not be called to testify.[8] The record suggests that the witnesses at issue in the police report will not be called to testify by the prosecution.
Further, we find no support in either statutory or case law for the prosecution’s apparent default policy of nondisclosure, which in this case is to redact all identifying information in a police report, regardless of whether the individuals therein will be called to testify or not. We also note that such a practice appears at odds with due process and thwarts the open nature of our justice system. See generally La. Const. art. 1, § 2 (Due Process of Law) and § 22 (Access to Courts); State in Interest of A.C., 643 So.2d 719, 728 (La. 1994) (Without “a sufficient countervailing justification for the State’s action [the denial of access will be] a denial of due process.”) (brackets in original) (quoting Boddie v. Connecticut, 401 U.S. 371, 382, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)).[9]
*619 We therefore find that the trial judge was correct to order the release of an unredacted police report as those witnesses other than Three, Four, and Eight. As discussed in Part III-A, ante,'the latter witnesses are to be interviewed in camera before any identifying information is disclosed to the defendant.
lisC
In his per curiam, the trial judge also ordered the contact information of the “two witnesses not contained in the police report” but which were included in the Notice of Disclosure provided to the defense. The Notice provides that a family member of the decedent stated Rory Dimes had told her that the perpetrator was known as “Blackman.” The Notice also discloses that Calvin Hughes gave a description of the shooter and the shooter’s car, which allegedly conflicts with other eyewitness descriptions. The trial judge ruled that Mr. Johnson is entitled to “full cross examination of the disclosed witnesses.” But, because Mr. Johnson’s motion only referenced Calvin Hughes, we vacate the portion of the judgment which requires the prosecution to provide identifying information for the unidentified family member contained in the Notice.[10]
As to Mr. Hughes, the Notice of Disclosure provides that Mr. Hughes stated the shooter possibly had dreadlocks and drove a car with a Texas license plate. Mr. Johnson argues that he had short hair at the time of the incident and that his car bore a Louisiana license plate. Although investigating officers did not conduct an identification procedure, we do find the allegation of .Mr. Hughes’s conflicting descriptions similar to the cases of Witnesses Three, Four,, and Eight. Thus, as | uwith Witnesses Three, Four, and Eight, the trial judge should conduct an in camera interview with Mr. Hughes to determine whether Mr. Johnson is entitled to Mr. Hughes’s contact information. During the inspection, the trial judge should consider whether Mr. Johnson has demonstrated that his efforts to locate Mr. Hughes through the exercise of reasonable diligence have failed. See Harper, 10-0356, p. 13, 53 So.3d at 1272 (suggesting that a successful showing that all attempts to locate the witness have failed may be an exceptional circumstance warranting disclosure of the witness’s contact information).
IV
' We now address the portion of the trial judge’s 'ruling which granted the defendant’s Motion to Produce Tangible Objects in Possession of the State.
A
Mr. Johnson sought the recorded interviews and identification procedures conducted with Witnesses Three and *620 Four,[11] who did not identify him in a lineup, and the recorded interview with Witness Two, who did identify him in a lineup.[12]
Under the provisions of • La. C.Cr.P; art. 718, applicable at the time, on motion of the defendant, “the court -shall order the district attorney to permit or authorize the . defendant., .to inspect, copy.. .or otherwise > reproduce,. .photographs, tangible objects.,, .that are within the possession, custody, or control of the state....” The tangible objects must be favorable to the defendant and material to hiiguilt or punishment, or they must be intended for use by the state at trial. See La. C.Cr.P. art. 718 (1) and (2) (2013). Although the trial court may conduct an in camera inspection to determine the nature of the requested materials, a defendant will be denied such an inspection if the prosecution' has denied possession of the specific materials. See State v. Cobb, 419 So.2d 1237, 1241 (La. 1982).
Here, the prosecutor admitted that the recorded interviews requested by Mr. Johnson are in possession of the state and indicated that the materials are to be used in the prosecution’s case-in-chief. Moreover, as discussed above, the interviews and identification procedures with Witnesses Three and Four are arguably material and relevant to the issue of guilt, in a case where a majority of the eyewitnesses described the shooter but were unable to identify Mr. Johnson in a photographic lineup. See also, n. 7, ante. We find, however, that before ordering the prosecution to turn over the recorded interviews and identification procedures with Witnesses Two, Three, and Four, the trial judge should conduct an in camera inspection to determine whether the information on: the recordings is favorable to Mr. Johnson as exculpatory or impeachment evidence. See Harper, 10-0356, p. 10, 53 So.3d at 1270; Cobb, 419 So.2d at 1242. We also point out that, for .purposes of materiality, there is an important distinction between a witness who merely says, “I don’t recognize anyone,” and a witness who affirmatively states, “The shooter is none of these men.”
ImB
Mr. Johnson also sought the recorded interviews conducted with Witnesses Five, Six, and Seven, and the recorded calls of an inmate, labeled as Witness Eleven -in the police report.
According to the police report, Witness Five told detectives that although he witnessed a “black male” exit an Infiniti sedan and heard shots fired shortly after-wards, he “could not provide investigators with a description of the shooter.” Likewise, Witness Seven told investigators that he was on the scene and spoke with the victim briefly, but left the area before the shooting. The witnesses were not shown photographic lineups. Mr. Johnson has not demonstrated how recorded interviews with these witnesses are material to his guilt or punishment and we find no reason why he would be entitled to them under the provisions of La. C.Cr.P. art. 718.
Witness Six was standing in the area when she observed Ruben Brown drive up in a, car with a Texas license plate. She spoke with Mr. Brown briefly but stated that she left the area before the shooting. She did not describe the shooter *621 but told investigators that she heard the shooter was known as, “Blackman,” Regarding the jailhpuse recordings, the inmate (Witness Eleven) spoke to Witnesses Six and Two at different times. Witness Six told him she “saw” the individual who committed the shooting and Witness Two told the inmate he “knows” the shooter. These calls notably occurred before police interviewed Witness Six, during which interview she informed investigators that she did not witness the shooting. Evidence of a |! ./witness’s inconsistent statements can be powerful impeachment evidence. See, e.g., State v. Owunta, 99-1569, p. 1 (La. 5/26/00), 761 So.2d 528, 529 (per curiam); La. C.E. art. 607. And, even if Witness Six will not be called to testify, if she indeed witnessed the shooting, she may be in possession of evidence valuable to -the defense. Therefore, we find that the trial judge should also conduct an in camera inspection of this witness and/or her- statements to determine if Mr. Johnson is entitled to them under the provisions of La. C.Cr.P. art. 718, applicable at the time.[13] Likewise, because Witness Six allegedly conveyed to Witness Eleven that she personally witnessed the shooting, the trial judge should also examine in camera the jailhouse telephone recordings.
As,to Witness Two, Mr. Johnson already possesses the recorded identification procedure and the recorded interview is to be submitted to' the trial judge for an in .camera inspection.
In sum, the recorded interviews, with Witnesses Three, Four, Six, as well as Two, and the recorded phone call of Witness Eleven, shall be examined by the trial judge in camera to determine what, if any, Brady material they possess,.or if other circumstances are present which, would en•title Mr. Johnson to the evidence. The trial judge’s ruling with respect to the remaining tangible objects listed in-Mr. Johnson’s .motion is vacated.
^CONCLUSION
• We vacate the trial judge’s ruling which ordered the district attorney to produce an unredacted police, report with regard to Witnesses Three, Pour, and Eight. We affirm the remainder of the ruling which ordered an unredacted police -report. To clarify: the identifying information of Witnesses Three, ¡Four, and Eight shall be redacted pending in camera interviews; the remainder of the report shall be unre-dacted and disclosed to the defense.
We vacate the ruling which ordered production of the contact information of both witnesses in the Notice of Disclosure and which granted the Motion to Produce Tangible Objects In Possession of the State. We-recall the stay previously imposed and remand for further proceedings.
REMAND INSTRUCTIONS
We remand for the trial judge to interview in camera Witnesses Three, Four, and Eight, as well as Calvin Hughes. He is also to inspect in camera the recorded interviews of Witnesses Three, Four, Six, as well as Two, and the recorded phone call between Witnesses Six and Eleven. If the trial judge determines that any of the foregoing witnesses or recordings contain material exculpatory or impeachment evidence under Brady, or if he determines that extraordinary circumstances are present under Harper, he is authorized to release such information, and only that information, to Mr. Johnson.
*622 We acknowledge the difficulty in conducting a pre-trial determination in light of the retrospective test for materiality, which is • more often undertaken in | ^collateral review proceedings. The Louisiana Supreme Court has stated, however, that the concept of materiality in a pretrial posture “is to be given its ordinary meaning in the law of evidence,” where an examination is made into “the relation between the propositions for which the evidence is offered and the issues in the case.” See State v. Ortiz, 567 So.2d 81, 83 (La. 1990) (quoting McCormick on Evidence, § 185 at 341 (3rd Ed. 1984)).
We also emphasize that the in camera inspections do not absolve the prosecution of its ongoing obligation to disclose material exculpatory or impeachment evidence. The prosecution’s duty is non-delegable and does not shift to the trial judge, notwithstanding the ultimate ruling after the in camera review. See generally U.S. v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (duty remains whether defense makes specific request or not); State v. Marshall, 94-0461, p. 12 (La. 9/5/95), 660 So.2d 819, 825 (prosecutor has “affirmative duty” to disclose Brady evidence). Should the prosecution, on its own, conclude that the evidence in its possession is Brady material, it must disclose such evidence to the defense.
WRIT GRANTED; VACATED AND REMANDED; STAY RECALLED
LOVE, J„ CONCURS IN PART AND DISSENTS IN PART

. Mr. Johnson's motion requested the contact information of only one witness in the Notice of Disclosure, Calvin Hughes, yet the trial judge ruled that the defendant was entitled to the identifying information of "the two witnesses contained in the Notice of Disclosure.” This discrepancy is discussed in more detail in Part III-C, post.

. 10-0356 (La. 11/30/10), 53 So.3d 1263.

. We have previously noted that even though La. C.Cr.P. art. 729.7 is inapplicable to a case, it may nevertheless be used as guidance, especially when the central determination is whether a witness’s safety will be compromised by the release of his or her identifying information. See State v. Williams, 15-1074, p. 8 (La. App. 4 Cir. 10/20/15) (unpub’d). In this case, however, the prosecution has not expressed any specific concerns nor made any showing that the witnesses’ safety may be in jeopardy if their information is disclosed to the defense.

. This Article has since beqn amended by 2013 fa. Acts 250.

, Thus, when there has been a request made by the defense for Brady material or evidence that otherwise requires á showing of extraordinary circumstances, and if the prosecutor refuses to furnish the information (in light of ' an argument, perhaps, that the state is not in possession of Brady evidence), the trial-judge must then inspect the evidence -in camera' to determine whether the defendant is entitled to it under federal (.Brady) or state (“extraordinary circumstances” or “fundamental fairness”) jurisprudence. But see State v. Lee, 00-0831, pp. 4-5 (La. App. 4 Cir. 5/8/00), 767 So.2d 97, 100 (“While the trial court may conduct an in camera inspection of evidence to determine whether it is Brady material, the initial privilege—and high responsibility—belongs to the State....”) (emphasis in original).

.Both Articles have since been amended by 2013 La. Acts 250.

. It is worth noting that Mr. Johnson claims in his brief that although Witness Two identified him in a photographic lineup, the recorded identification procedure reveals that , the witness initially refused to identify anyone. Mr. Johnson alleges that a “heated discussion” occured,' which eventually resulted in Witness Two initialing Mr. Johnson’s photograph. Mr. Johnson also alleges in his brief, that Witness Two testified in open court that *618 Mr. Johnson was not the shooter and that an assistant district attorney had traveled to the prison where Witness Two was housed and offered to reduce his prison term if he would testify that Mr. Johnson was the shooter. The witness apparently rejected this offer. We have no transcript of the testimony in the record before us, but the Orleans Parish Docket Master indicates that Witness Two testified in court and the colloquy between defense counsel and the trial judge in the current record corroborates this. It thus makes an even stronger case for Mr. Johnson to have accéss to the witnesses who did not identify him.

. This distinction between "state witnesses” and "non-state witnesses” illuminates the trial judge’s reasons for judgment set forth in his per curiam.

. Of course we recognize that under Brady, "the prosecutor is not required to deliver his entire file to defense counsel....” U.S. v. Bagley, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).'This should not be read, however, as sanctioning an entirely closed-file policy. See generally State v. Wells, 11-0744, p. 11 (La. App. 4 Cir. 4/13/16), 191 So.3d 1127, 1139 (disapproving of the Orleans Parish prosecuting authorities’ practice of producing discoverable evidence in “dribs and *619 drabs” over extended periods of timé) (internal citation omitted).

. Mr. Johnson also filed a Motion for Evi-dentiary Hearing Upon Unnamed Identification Witness wherein he sought information pertaining to "two or more identification witnesses which ADA Jason Napoli divulged in open court he had garnered, while ‘in the street,’ ” The record indicates that these witnesses are two different people than the two people in the Notice of Disclosure. Nor are they in the police report. The prosecutor stated that there was no identification procedure conducted with the two unnamed individuals but "[t]hey saw [the shooter] do it...They knew him by name.” The trial judge ruled that if the prosecution had offered the two witnesses anything in exchange for their testimony, it must disclose such to the defense. The prosecution does not complain about that ruling in the instant writ application.

. It is unclear why Mr, Johnson did not request the recorded identification procedure with Witness Eight, who also failed to identify him in a photographic lineup.

. Mr. Johnson concedes in his brief that he has already received a copy of the recorded identification procedure conducted with Witness Two and is aware of the witness's identify.

. Whether the evidence is favorable to Mr. Johnson and material to guilt or punishment appears to be the most relevant consideration. See La. C.Cr.P. art. 718(1). Of course, if the prosecution intends to use the evidence at trial, then La. C.Cr.P. art: 718(2) would also entitle Mr, Johnson to the recordings.